UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| HAWKEYE-SECURITY INSURANCE COMPANY and THE MIDWESTERN INDEMNITY COMPANY | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:08CV01071 ERW |
| DONALD A. BUNCH, et al., | ) ) | |
| Defendants. | ) | |


## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs Hawkeye-Security Insurance Company

and the Midwestern Indemnity Company's Motion for Partial Summary Judgment Regarding

Coverage for Daniel Brandt [doc. #38], Plaintiffs' Motion for Partial Summary Judgment

Regarding Coverage for Donald Bunch's Underinsured Motorist Claim [doc. #42], and Motion of

Defendants Donald A. Bunch, Patricia A. Bunch and Daniel H. Brandt II for Partial Summary

Judgment Against Plaintiffs Regarding Liability Coverage for Daniel H. Brandt, II [doc. #50].

## I.    PROCEDURAL HISTORY

On or about March 20, 2008, Defendants Donald A. Bunch ("Mr. Bunch") and Patricia A

Bunch ("Mrs. Bunch") filed a Petition for Personal Injury/Automobile Accident against two

defendants, including Defendant Daniel H. Brandt, II ("Mr. Brandt"), in the Circuit Court of

Jefferson County Missouri.  The Petition in the underlying action alleged that on November 26,

2007, Mr. Brandt negligently operated a vehicle in which Mr. Bunch was a passenger, thereby

causing injuries to Mr. Bunch.  At the time of the accident, Mr. Brandt was operating a 2004 Jeep

Liberty owned by Total Lock & Security/The Installers Company (hereinafter referred to as "TL/IC"). Plaintiffs Hawkeye-Security Insurance Company and the Midwestern Indemnity Company (hereinafter "Plaintiffs") filed the instant declaratory judgment action, seeking a declaration that there is no coverage for Mr. Brandt arising out of the accident on November 26, 2007, involving the Jeep Liberty, because Mr. Brandt was not an insured under the terms of Plaintiffs' policies of insurance. Plaintiffs also filed the action seeking a declaration that there is no underinsured coverage for Mr. Bunch because coverage is precluded under the terms of either the Primary Policy or Umbrella Policy.

## II.    BACKGROUND[1]

The Court begins by noting that, in a motion for summary judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). Any matters that are not specifically

---

[1] The Court's recitation of the facts is taken from Plaintiffs' Statement of Uncontroverted Material Facts in Support of Their Motion for Partial Summary Judgment Regarding Coverage for Daniel Brandt [doc. #39], Statement of Controverted Facts (Genuine Issues) By Defendants In Opposition to Plaintiffs' Motion for Partial Summary Judgment Regarding Coverage for Daniel Brandt [doc. #48], Plaintiffs' Response to Defendants' Additional Facts in its Statement of Controverted Material Facts [doc. #56], Plaintiffs' Statement of Uncontroverted Material Facts in Support of their Motion for Partial Summary Judgment Regarding Coverage for Donald Bunch's Underinsured Motorist Claim [doc. #44], Statement of Uncontroverted Material Facts By Defendants in Opposition to Plaintiffs' Motion for Partial Summary Judgment Regarding Coverage for Donald Bunch's Underinsured Motorist Claim [doc. #57], Plaintiffs' Response to Defendants' Additional Facts in its Statement of Controverted Material Facts [doc. #68], Statement of Uncontroverted Material Facts By Defendants in Support of their Motion for Partial Summary Judgment Regarding Liability Coverage for Daniel H. Brandt, II, [doc. # 51], Plaintiffs' Response to Statement of Uncontroverted Facts by Defendants in Support of Their Motion for Partial Summary Judgment Regarding Liability Coverage for Daniel H. Brandt, II [doc. #71], and Defendants' Supplement Statement of Material Facts [doc. #87]. The Court also considered various exhibits, where appropriate.

controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a motion for summary judgment, but, in doing so, it "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

Turning now to the facts of the case, Total Lock & Security sells locks and installs locks, doors, and frames. The Installers Company employees go across the United States installing the locks. Total lock & Security and the Installers Company are two separate entities both of which are owned and operated by Michelle "Gidget" Fogerty ("Ms. Fogerty"). John McGeehan ("Mr. McGeehan") is the facilities manager at Total Lock & Security/The Installers Company whose responsibilities include training installers and maintenance of all company vehicles. Eve Rone ("Ms. Rone") is the dispatcher for The Installers Company. Her responsibilities include issuing company vehicles to installers and managing the work schedules for installers.

Defendant Daniel Brandt ("Mr. Brandt") was employed by the Installers Company beginning in May 2007.  Mr. Brandt performed his last day of work on behalf of The Installers Company on October 26, 2007.  Mr. Brandt faxed in a request for time off after his job ending on October 26, 2007.  Mr. Brandt was not scheduled for any further jobs as an installer.  The parties dispute whether or not Mr. Brandt was employed by the Installers Company on November 26, 2007 (the date of the accident underlying this suit).[2]  Mr. Brandt was authorized to operate company vehicles and this authorization was not expressly revoked by the company at anytime prior to November 26, 2007.  However, Mr. Brandt admits that he never came back to work at the Installers Company after the accident.   Mr. Brandt lived with Mr. and Mrs. Bunch at their home in Arnold, Missouri prior to the accident.

Defendants Donald and Patricia Bunch were employees of The Installers Company from approximately May 2006 until the date of the accident.  TL/IC provided Mr. and Mrs. Bunch with a company vehicle, a Jeep Liberty.   The company vehicle was released to Mrs. Patricia Bunch.  The parties disagree over whether the vehicle was provided solely for use during work trips.  Defendants claim that Michelle Fogerty gave them permission to use the vehicle for personal and

---

[2]Defendants claim that Mr. Brandt was an employee at the time of the accident.  As support, Defendants point to a communication from the President of TL/IC, Michelle Fogerty, dated December 3, 2007 (six days after the accident), which contains the statement of Ms. Fogerty that "the driver, Daniel Brandt, is one of our employees, but he was not given the vehicle."  The communication bears a "fax" date of December 6, 2007 and is labeled Defendants' Exhibit A.  Plaintiffs allege that Mr. Brandt did not express any interest in coming back to work after October 25, that he told another installer that he was quitting his job, and that his name does not appear on the list of authorized drivers.  Defendants contest this fact, and as support, Defendants point to deposition testimony where Mr. Brandt states that he never told anyone he was going to quit and that he intended to go back to work after the holidays.  Whether Mr. Brandt was, or was not, an employee of TL/IC at the time of the collision remains an undecided factual issue at this stage of the case.

business use when needed.  Plaintiffs state that the vehicle was provided for use during work trips only.  When the accident occurred and for several months before, Mr. Bunch was not authorized to drive any vehicle owned by TL/IC because of a prior DWI conviction.  At the time of the accident, Mr. and Mrs. Bunch owned a personal vehicle.

On November 21, 2007, Mr. and Mrs. Bunch returned home late from a work trip.  Prior to returning to the St. Louis area, Mr. and Mrs. Bunch had been out of town on work trips for seven or eight months straight.  Mr. and Mrs. Bunch were driving the Jeep Liberty and drove directly to their home upon returning.  On Friday, November 23, 2007, Mr. and Mrs. Bunch traveled in the Jeep Liberty from their home in Arnold, Missouri to The Installers Company Office in Maryland Heights, Missouri.  While at the office, John McGeehan told Mr. and Mrs. Bunch that the Jeep Liberty needed maintenance performed before they could use it for their next work trip.  Mr. and Mrs. Bunch were scheduled to leave St. Louis on their next work trip on Tuesday, November 27, 2009.  Ms. Fogerty and Mr. McGeehan allowed Mr. and Mrs. Bunch to take the vehicle back to their residence and take it in for its required maintenance. [3]

On Monday, November 26, 2007 (the day of the accident), Mr. Brandt woke up in the morning and began drinking beer between 10:00 a.m. and 12:00 p.m.  Mr. Brandt admitted to drinking seven (7) beers at the Bunch residence before driving the Jeep Liberty on Monday, November 26, 2007.  Mr. Brandt drank openly in the house, within close proximity to Mr. and

---

[3]The Defendants contest Plaintiff's claim that Ms. Fogerty told Mr. and Mrs. Bunch on Friday November 23, 2007, that they were not to use the Jeep Liberty for any personal use between that day and when they left for their work trip on November 27, 2007.  The Defendants also contest Plaintiff's claim that Mr. and Mrs. Bunch told Ms. Fogerty that the Liberty would remain parked until their work trip after returning home on November 23, 2007.  Mr. Bunch testified that Ms. Fogerty allowed them to use the Jeep for their personal use while in St. Louis as well as when they were on job sites in other cities.

Mrs. Bunch. Sometime between 4:00 p.m. and 5:00 p.m., Mrs. Bunch asked Mr. Brandt to drive Mr. Bunch to his mother's home to drop off some food. Mrs. Bunch handed the keys for the Jeep Liberty to Mr. Brandt right before he left with Mr. Bunch. Shortly thereafter, Mr. Brandt drove Mr. Bunch, in the Jeep Liberty, to Mr. Bunch's mother's home in Hillsboro, Missouri.

Mr. Brandt admits that he did not speak to anyone at TL/IC to inform them that he was going to be taking Mr. Bunch for the ride to his mother's house and then to get gas. Mr. Brandt states that Mrs. Bunch gave him express permission to drive the vehicle. Based on the facts presented by both sides, no other employees aside from Mr. and Mrs. Bunch gave Mr. Brandt express permission to operate the vehicle on this trip. Prior to going on the trip, Mr. Bunch talked to Ms. Eve Rone, the company dispatcher, about visiting his mother to take her some food. He says that Ms. Rone gave him express permission to take the food to his mother in the Jeep Liberty. However, Mr. Brandt never spoke to anyone at TL/IC to inform them that he was going to take Mr. Bunch for a ride.

After arriving in Hillsboro, Mr. Brandt consumed two additional beers provided by Mr. Bunch's mother. Mr. Bunch admittedly consumed beer with Mr. Brandt while at his mother's home in Hillsboro. After leaving Hillsboro, Mr. Brandt decided to drive in the direction of a gas station on Richardson Road and Vogel to refuel the Jeep Liberty. While traveling through Jefferson County, Mr. Brandt was involved in a collision with another vehicle at the intersection of Route A and Bradley Street. The accident occurred at approximately 7:30 p.m. on Monday, November 26, 2007. Mr. Brandt was driving the Jeep Liberty owned by TL/IC.

After the accident, Mr. Brandt was arrested by Corporal Cary Houston of the Festus Police Department for Driving While Intoxicated. At the time of the arrest, Mr. Brandt was

administered a Breathalyzer Test. The results of the test reveals Mr. Brandt had a Blood Alcohol Content of 0.196. Mr. Brandt pled guilty to the Driving While Intoxicated Charge. As punishment, he received a suspended imposition of sentence, and the state suspended his driver's license for ninety (90) days.

After the accident, the Jeep Liberty was towed from the accident scene to Weber Chevrolet body shop. Mr. McGeehan, Ms. Rone, and Ms. Fogerty inspected the Jeep Liberty and its contents after it was taken to Weber Chevrolet. Mr. McGeehan testified that inside the Jeep Liberty, he found a cooler with three unopened beers and three empty beer cans on the floor of the vehicle. In his deposition, Mr. Brandt testified that on the day of the accident prior to its occurrence at approximately 7:30 p.m., he drank at least nine (9) beers.[4]

When Mr. and Mrs. Bunch took the Jeep Liberty in for maintenance on November 23, 2007, there were 140,662 miles on the vehicle. According to the B&K Towing receipt, at the time of the accident there were 140,803 miles on the Liberty. Between being issued the Liberty on Friday and the time of the accident, Mr. and Mrs. Bunch put 141 miles on the vehicle.[5]

At the time of the accident, TL/IC had a "no tolerance" policy on drinking, such that no person was ever authorized to drink alcohol and operate a company vehicle. Ms. Rone personally communicated this "zero tolerance" policy to Mr. and Mrs. Bunch before the accident and to Mr.

---

[4]In Plaintiff's Motion for Summary Judgment, Plaintiff relies on a report by Dr. Christopher Long to conclude how many beers were in Mr. Brandt's system at the time of the breathalyzer test. The Court finds that Plaintiff failed to comply with the requirements outlined in Rule 56(e); therefore, the Court does not rely on the information contained therein.

[5]Defendants contest Plaintiffs' assertion that all of the miles were for personal use since Mr. Bunch and Mr. Brandt were on their way to obtain gas in the Jeep Liberty in anticipation of the trip to Washington, D.C. the next morning. This disputed fact is not dispositive of any conclusion in this opinion.

Brandt during his interview with the Installers Company. Mr. Bunch testified that he did not believe it was ok to operate a vehicle assigned by TL/IC after consuming alcohol. He also testified that he did not think it was ok for someone to be drinking and driving. Mrs. Bunch testified that Mr. Brandt had no authority to operate the Jeep Liberty if he was intoxicated the evening of the accident.

In regards to company policies, Mr. Brandt admitted in his deposition that he never had the authority to use any of the company's vehicles after consuming alcohol. Mr. Brandt also testified that when he first started his employment in 2007, he received no instructions from supervisory personnel regarding use of company vehicles. The evidence also shows that there were no written documents or employee handbooks with respect to the use of company vehicles at TL/IC. On at least one occasion, Ms. Fogerty permitted Mr. Brandt to use a company vehicle for personal errands over a course of a weekend. When TL/IC employees were on extended trips, they were entitled to use company vehicles for personal use without reporting those uses to anyone at TL/IC. Mr. Brandt also testified that at the time of the accident, he believed that all installers were able to use any company vehicle at any time. He claimed that this policy was taught to him by other installers. Mr. Harold Merx, another employee at TL/IC, testified that he was never told whether he could or could not use his company vehicle for personal reasons while in St. Louis. Mr. Merx testified that he used his vehicle for personal use.

Mrs. Fogerty testified that when a company vehicle was assigned, it was assigned to a specific crew. Furthermore, the only people authorized to drive the assigned vehicle were the people on that job crew who otherwise were allowed to drive company vehicles. Mr. Bunch testified that when assigned a company vehicle, it was assigned to his crew which consisted of him

and Mrs. Bunch. Mr. Bunch also stated that no supervisor at TL/IC ever said anything to cause him to believe that he could or could not allow someone outside of his work crew to operate the Jeep Liberty. Mr. Bunch agreed that the Jeep Liberty was assigned to only him and Mrs. Bunch at the time of the accident. Mr. Brandt testified that the Jeep Liberty was not assigned to him at the time of the accident. Plaintiffs admit that TL/IC had no written policies prior to the accident related to company vehicles.

At the time of said collision on November 26, 2007, there was in full force and effect a Commercial Auto Policy issued by the Midwestern Indemnity Company. Plaintiff Midwestern Indemnity Company issued the primary commercial general liability insurance policy, Policy Number BA 8127345 to Total Lock & Security/The Installers Company as the named insureds. The policy period ran from March 14, 2007 through March 14, 2008. The Jeep Liberty was listed as a scheduled vehicle under the Primary Policy issued by Plaintiff Midwestern as "Covered Auto No. 014." The critical portions of the Midwestern Policy states:

> Section II - Liability Coverage
> A.      Coverage
>         We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
> *********
>         1.      Who Is An Insured
>                 The following are "insureds"
>                 a.      You for any covered "auto".
>                 b.      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>                 (1)     The Owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>                 (2)     Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

      (3)      Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4)      Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

      (5)      A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

The Midwestern Policy defines "you" or "your" as the "named insured" contained in the declarations. The named insureds are two corporations, Total Lock & Security, and the Installers Company.

The Midwestern policy also includes several relevant provisions relating to underinsured motorist policy. These provisions include:

### MISSOURI UNDERINSURED MOTORISTS COVERAGE

A.      We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The policy also contains the following exclusions to the underinsured motorist coverage part:

C.      Exclusions

      \*\*\*\*\*\*\*\*\*

      3.      Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

Also during this time, there was in full force and effect an "umbrella policy." Plaintiff Hawkeye-Security Insurance Company issued the umbrella policy, Policy Number CU 8127455, to Total Lock & Security/The Installers Company as named insureds with the policy period from March 14, 2007 through March 14, 2008. The "umbrella policy" contains the relevant definition of insured:

SECTION II - WHO IS AN INSURED
*********
2.      Only with respect to the "auto hazard":
      a.      You are an insured;
      b.      Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

*************************************************************************

The Umbrella Policy contains the following relevant exclusions:

3.      Exclusions
      This insurance does not apply to:
      *********
      f.      Motor Vehicle Laws and Coverages
      Motor vehicle no fault laws, first party physical damage coverage, personal injury protection coverage, uninsured motorists or underinsured motorists laws; or other laws or coverages similar to any of the foregoing.
      *********
      This exclusion does not apply to the extent that valid "scheduled underlying insurance" is applicable to the "bodily injury", "property damage" or "personal and advertising injury" described above or would have been applicable to such injury or damage but for the exhaustion of the limits of the "scheduled underlying insurance"...

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are

those "that might affect the outcome of the suit under the governing law," and a genuine material

fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at

248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the

existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving

party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th

Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine

dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative

evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S.

at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on

the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts

showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v.

Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party

must "do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the

nonmoving party must show there is sufficient evidence favoring the nonmoving party which

would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at

334. "If the non-moving party fails to produce such evidence, summary judgment is proper."

*Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV.   DISCUSSION

## A.   DEFENDANTS DONALD BUNCH, PATRICIA A. BUNCH AND DANIEL H. BRANDT II'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS REGARDING LIABILITY COVERAGE FOR DANIEL H. BRANDT, II [doc. #50]

Defendants contend that the Midwestern policy is ambiguous because the policy contained no provision related to or connected with liability coverage thereunder which requires that permission to use a "covered auto" come from an executive officer, director, supervisor, manager, or any other specific type of employee of TL/IC. Furthermore, Defendants claim that no provision or exclusion limits the use of a covered auto to "business purposes only." As a result, Defendants argue that the policy is ambiguous and requests that the Court construe these ambiguous provisions against the insurers, Plaintiffs Hawkeye and Midwestern, to find that Mr. Brandt was covered under the policy as a matter of law.

In Missouri, the interpretation of an insurance policy is a question of law for the court. *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) (en banc). In construing the terms of an insurance policy, a Missouri Court applies "the meaning which would be attached by

an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Id.* (internal citations omitted). Ambiguity exists where there is "duplicity, indistinctness, or uncertainty" in the language of the policy or, put another way, where the language is "reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (internal citations omitted).

Unambiguous terms in an insurance policy "are given their plain meaning and enforced as written, while ambiguous terms are construed against the insurer." *Lindsay v. Safeco Ins. Co. of Am.*, 447 F.3d 615, 617 (8th Cir. 2006). Furthermore, "mere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous." *Id.* (quoting *Mo. Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo. App. W.D. 2004). Additionally, policy language does not become ambiguous merely because a term in the policy is not defined. *American Family Mut. Ins. Co. v. Peck*, 169 S.W.3d 563, 567 (Mo. App. W.D. 2005). "A court may not create an ambiguity in order to distort the language of an unambiguous policy, or in order to enforce a particular construction which it might feel is more appropriate." *Lindsay*, 447 F.3d at 617 (quoting *Rice v. Fire Ins. Exch.*, 946 S.W.2d 40, 44 (Mo. App. S.D. 1997). Defendants contends that the insurance policy contains no language requiring that "permission" come from a director, supervisor, manager, or any other specific employee at TL/IC. Defendants claim that the absence of any such language creates an ambiguity as to which employees in the corporations are considered insureds under the policy. This issue is important since an individual is covered under the policy if he or she received permission from an "insured." In this case, if the Court concludes that Mr. and Mrs. Bunch are "insureds" under the policy, then they have the authority to grant

Mr. Brandt permission to operate the vehicle. The critical portions of the Midwestern Policy state:

1. Who Is An Insured
   The following are "insureds"
   a. You for any covered "auto".
   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
      (1) The Owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
      (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
      (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

The Midwestern policy defines "you" or "your" as the "named insured" contained in the declarations. In the policies, the named insureds are two corporations, Total Lock & Security and the Installers Company. There are no other identified "named insureds."

Defendants argue that an ambiguity is created by the lack of any express policy language regarding who may grant permission to use a vehicle on behalf of the named insured, TL/IC. The Court agrees that the policy does not specifically state which individuals have the power to grant permission to use a covered "auto." However, the Court finds that this fact does not create an ambiguity as to who has the power to grant permission because the policy clearly states that

general employees are not "named insureds"; therefore, they do not have the power to grant permission to use a covered vehicle.

In interpreting an insurance contract, Missouri Courts read the contract as a whole to determine the parties' intent. *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. App. W.D. 2008). "We give effect to this intent by enforcing the contract as written, according to the plain and ordinary meaning of its language." *Id.* "In interpreting an insurance contract, we must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Id.* (citing *Wildflower Community Association, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo. App. 2000).

In this case, the Court finds that the policy, when read as a whole, does not create any ambiguity as to who is an insured under the policy. The policy language demonstrates that employees are not "named insureds" under the policy because they are not listed in the declarations section. Additionally, the policy language clearly states that an employee is not defined as "insureds" unless the employee receives permission from the named insured, Total Lock & Security, to use a "covered auto." Under Section II(A)(1)(a) of the primary policy, an insured includes "*you* for any covered auto." (emphasis added). Section II(A)(1)(b) limits the number of insureds to "anyone else while using with *your* permission a covered 'auto' *you* own, hire or borrow..." (emphasis added). This section of the policy also gives a list of individuals who are not insured under the policy even if Total Lock & Security gives them permission to use a covered "auto." The policy excludes from coverage "*Your* 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household" notwithstanding permission by Total Lock & Security. (emphasis added). Section II(1)(b)(4) excludes from coverage "anyone

16

with *your* permission" who fits within the category of being "Anyone other than *your* 'employees'... while moving property to or from a covered 'auto.'"  Furthermore, "*you*" is defined as Total Lock & Security in the declarations section of the policy.

The Court finds the preceding provisions illustrate the intent behind this policy.  The specific references to "*your* employee" in (b)(2) and (b)(4) indicate that an "employee" is not considered an insured under the policy unless the named insured, Total Lock & Security, grants permission.  By specifically referencing employees of Total Lock & Security, the policy creates a distinction that the Court cannot ignore.  An ordinary person of average understanding reading this clause would conclude that Total Lock & Security employees are not " insureds" under the policy unless they have permission to use the vehicle.  The phrase "your employee" indicates that the employees belong to the "named insured," Total Lock & Security.  By specifically referencing employees in this way, the policy creates a distinction that the court cannot ignore.  The language of the policy clearly shows that employees do not have the power to give permission to use a "covered auto" under the policy.  Since the clause indicates that the employees are considered separate from the "named insured" itself, the Court finds that no ambiguity exists as to whether the employees may give permission to use a covered auto under the policy.  Employees are clearly not an "named insured" under the policy; therefore, the policy extends coverage to only those individuals who have received permission from the named insured, Total Lock & Security, to use a "covered vehicle."

Additionally, the Court finds that only the officers at TL/IC had authority to give employees permission to use a "covered auto."  In Missouri, permission must be granted through a written or spoken declaration by the named insured or someone with authority to bind the

named insured.  *Hanover Ins. Co. v. Abchal*, 375 S.W.2d 605, 609 (Mo. App. 1964).  A

corporation is an artificial being, and, as an entity it must act through an agent.  *Ritter v. BJC*

*Barnes Jewish Christian Health Systems*, 987 S.W.2d 377, 384 (Mo. App. E.D. 1999); *Standard*

*of Beaverdale, Inc. v. Hemphill*, 746 S.W.2d 662, 663 (Mo. App. 1988).  Missouri courts have

declared that "supervisory employees, having general powers or authority beyond that of

ministerial employees, are treated as agents of a corporation." *Stewart v. Alton and Southern*

*Railway Co.*, 849 S.W.2d 119, 125 (Mo. App. E.D. 1993).  Missouri Courts generally conclude

that officers and other supervisory employees have inherent authority to grant permission to other

employees to use vehicles owned by the corporation when the named insured on the insurance

policy is the corporation. *See Nautilus Ins. Co. v. I-70 Used Cars, Inc.*, 154 S.W.3d 521, 523

(Mo. App. W.D. 2005) (Court found that the owner of the Corporation had authority to grant

permission to use a covered vehicle under the insurance policy although the policy was issued to

the corporation, I-70 Used Cars, Inc.); *Universal Underwriters Ins. Co. v. Michael*, 781 S.W.2d

119, 123 (Mo. App. W.D. 1989) (Vice President of Corporation was a named insured under the

policy).

The facts in this case show that the named insured under the policies consisted of only the

two corporations, Total Lock & Security and the Installers Company.  The Midwestern policy,

which afforded liability coverage for covered vehicles, lists Total Lock & Security as the named

insured.  The Midwestern Policy states that liability coverage is available for "anyone using with

*your* permission." (emphasis added).  The policy states that "the words '*you*' and '*your*' refer to

the Named Insured shown in the Declarations."   The language of the Midwestern Policy clearly

demonstrates that Mr. Bunch, Mrs. Bunch, and Mr. Brandt were not "named insureds" under the

liability section of the policies. Additionally, the facts show that Mr. and Mrs. Bunch were not officers or supervisors with the corporation. Under Missouri law, the Court cannot conclude that Mr. and Mrs. Bunch were "named insureds" since they were neither supervisors nor officers at TL/IC. Furthermore, the Court finds that Mr. Brandt was not a named insured since he was neither a supervisor nor an officer at TL/IC. The Court concludes that an ordinary person of average understanding would conclude that Mr. and Mrs. Bunch did not have the authority to grant permission use a covered vehicle under the terms of the polices.

The Court finds that there is no ambiguity in the language of the policy. Only corporate officers and authorized supervisors had authority to grant permission to use a covered vehicle under the terms of the policies. Defendant fails to demonstrate to the Court that Mr. Brandt was an "insured" under the liability coverage section of the policies as a matter of law. Defendant's Motion for Partial Summary Judgment Regarding Liability Coverage for Daniel H. Brandt is denied.

## B. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COVERAGE FOR DANIEL BRANDT [doc. #38]

Plaintiff argues that Mr. Brandt was not a name insured under the motor vehicle insurance policies because he did not have permission to use the vehicle. In Missouri, motor vehicle liability insurance policies define an omnibus insured as one using the insured vehicle with the permission of the insured. *See* 30 Mo. Prac. Series, Insurance Law & Practice § 9:12 (2009). Missouri courts generally hold that permissive use of a vehicle under an omnibus clause of an automobile insurance policy is a question of fact, which may be satisfied by a showing of either express or implied permission. *Shelter Mutual Ins. Co. v. See*, 46 S.W.3d 65, 67 (Mo. App. W.D. 2001);

*State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo. App. W.D. 1998); *State Farm Fire & Cas. Co. v. Ricks*, 902 S.W.2d 323, 324 (Mo. App. E.D.1995). The Motor Vehicle Financial Responsibility Law mandates that an owner's policy extends coverage to persons using an insured motor vehicle with the express or implied permission of the insured. Mo. Rev. St. § 303.190.2(2) (2003); *See also*, *State Farm Fire & Cas. Co. v. Ricks*, 902 S.W.2d 323, 324 (Mo. App. E.D. 1995). The facts show that Mr. Brandt was not a named insured under the insurance policies issued by Defendants. Thus, to determine whether coverage extends to Mr. Brandt, the Court must determine whether he operated the Jeep Liberty with either the express or implied permission of the named insured, TL/IC.

### 1.    Express Permission

Plaintiffs assert that Mr. Brandt had no express permission from TL/IC at the time of the accident. Under Missouri law, an omnibus insured has express permission when the permission "is of an affirmative character, directly and distinctly stated, clear and outspoken and not merely implied or left to inference." *Shelter Mutual Ins. Co. v. See*, 46 S.W.3d 65, 67 (Mo. App. W.D. 2001); *Ricks*, 902 S.W.2d at 324. "Whether permission be expressly granted or impliedly conferred, it must originate in the language or conduct of the named insured or someone having authority to bind him in that respect." *Hanover Ins. Co. v. Abchal*, 375 S.W.2d 605, 609 (Mo. App. 1964).

The uncontested facts show that Mr. Brandt received permission to drive the Jeep Liberty from Mrs. Bunch. Both the primary and umbrella insurance policies were issued to TL/IC. The primary policy issued by Plaintiff Midwestern defines the insureds as "you for any covered auto" and also "anyone else while using with your permission a covered "auto you own, hire or

borrow..." Similarly, the umbrella policy issued by Plaintiff Hawkeye defines "insureds" under the policy to include "you are an insured" and "anyone else while using with your permission an 'auto' you own, hire or borrow..." Prior to the accident the facts show that TL/IC gave express permission to Mrs. Bunch to drive the vehicle but not Mr. Brandt. Ms. Fogerty and Mr. McGeehan allowed Mr. and Mrs. Bunch to take the vehicle back to their residence prior to Mr. and Mrs. Bunch leaving for their business trip. This permission given by Ms. Fogerty and Mr. McGeehan would extend only to Mr. Bunch to use the vehicle. The policy contains no language which would extend permission to someone who gets permission from someone else with express permission. Furthermore, Mr. Brandt admits that none of his supervisors at TL/IC knew he was operating the vehicle prior to the accident.

Thus, the Court finds that no genuine issues of material fact exist as to whether Mr. Brandt had express permission to use the Jeep Liberty. Mr. Bunch had no authority to grant express permission to Mr. Brandt to operate the Jeep Liberty.

### 2.     Implied Permission and the Second Permittee Doctrine

Plaintiffs also claim that Daniel Brandt did not have any implied permission to drive the Jeep Liberty at the time of the accident and was not a second permittee. Defendants claim that Mrs. Bunch was authorized to give Mr. Brandt permission to drive the vehicle and as a result Mr. Brandt is covered by the insurance policy as a "second permittee." The facts in this case show that a genuine issue of material fact exists as to whether Mr. Brandt had implied permission from TL/IC to use the vehicle.

In Missouri, "[i]mplied permission is determined from the facts and circumstances of the case and usually arises from a course of conduct of the parties over a period of time." *Shelter*, 46

21

S.W.3d at 67. "Implied permission may be the result of a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile." *Id.* The one relying upon implied permission must prove it. *Allstate Ins. Co. v. Hartford Accident and Indemnity Co.*, 486 S.W.2d 38, 44 (Mo. App. 1972); *Bourne v. Manley*, 435 S.W.2d 420, 427 (Mo. App. 1968).

Implied permission under an omnibus clause requires something more than mere sufferance or tolerance without taking steps to prevent it. *Allstate Ins.*, 486 S.W.2d at 45. Generally, implied permission for general use is more readily found in a social relationship than in an employer-employee relationship. *Cameron Mut. Ins. Co. v. Bollinger*, 834 S.W.2d 848, 850 (Mo. App. S.D. 1992). Missouri Courts have found that "permission to use an automobile can be derived from negative, as well as positive, factors." *Bollinger*, 834 S.W.2d at 851; *Universal Underwriters Ins. v. Michael*, 781 S.W.2d 119, 123 (Mo. App. W.D. 1989). "The absence of an explicit restriction is a strong indication that the use is permissive." *Bollinger*, 834 S.W.2d at 852. Missouri Court have found implied permission "from a lack of objections or specific restraints on the use of a vehicle." *Id.*

The issues raised in this case differ from the above cited cases. In this case, Defendants contend that Mr. Brandt had implied permission to drive the car as a second permittee. "Whether a named insured's grant of permission to a first permittee to use a vehicle impliedly authorizes the first permittee to allow another to use or operate the automobile is a question of fact." *Ricks*, 902 S.W.2d at 325 (citing *USF & G v. Safeco Ins. Co.*, 522 S.W.2d 809, 812 (Mo. banc 1975); *State Farm Mut. Auto. Ins. Co. v. Foley*, 624 S.W.2d 853, 856 (Mo. App. 1981)). Missouri courts

apply the following factors in determining whether someone is covered by an insurance policy as a

"second permittee":

1.  The permission must come from the named insured, not simply from the first permittee.
2.  Permission of the named insured to the second permittee may be implied as well as express.
3.  Permission may be proven by circumstantial evidence, but the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation.
4.  Permission from the named insured can be found or implied from a course of conduct which evidences the willingness of the named insured to permit the first permittee to authorize others to drive.

*Ricks*, 902 S.W.2d at 325 (citing *USF & G v. Safeco Ins. Co.*, 522 S.W.2d 809, 816 (Mo.1975)

(en banc).

In the current case, a genuine issue of material fact exists as to whether TL/IC gave Mr.

Brandt permission to operate the Jeep Liberty. This permission derives from the lack of

procedures regarding the use of company vehicles. The facts presented suggest that TL/IC gave

their employees broad and unfettered use of the vehicle. TL/IC had no written policy concerning

personal use of company vehicles. Furthermore, Mr. and Mrs. Bunch testified that no one at

TL/IC ever provided them with any policies or procedures for the use of company vehicles. Mr.

and Mrs. Bunch were granted almost unlimited use of the Jeep Liberty while on job sites located

outside the St. Louis area. They also claim that this permission extended to personal use while in

St. Louis. Atleast one other TL/IC employee made similar claims. Mr. Harold Merx, another

employee at TL/IC, testified that he was never told by TL/IC supervisors whether he could or

could not use his company vehicle for personal reasons while in St. Louis. Mr. Merx testified that

he used his vehicle for personal use. Additionally, Mr. Bunch testified that Ms. Eve Rone had

prior knowledge that he and his wife intended to use the vehicle to deliver food to his mother in Hillsboro, MO. He also testified that Ms. Rone told him to "go ahead" and take the food to his mother's in the Jeep Liberty. If the jury finds that Mr. Brandt was an employee, Mr. Brandt would have been authorized to operate company vehicles. During his deposition, Mr. Brandt stated that all installers were able to use any company vehicle at any time. He claimed that this policy was taught to him by other installers. Given all these facts, a reasonable inference exists that Mr. Brandt had implied permission from TL/IC to drive the Jeep Liberty.

Based on the evidence presented, the Court finds that a genuine issue of material fact exists as to whether Mr. Brandt had implied permission to drive the Jeep Liberty as a second permittee.

### 3.     Major Deviation from Permission Granted

Plaintiffs also contend that even if Mr. Brandt had implied permission to use the Jeep Liberty at the time the accident that the Court should still deny coverage for Mr. Brandt as a matter of law because his use of the Jeep Liberty was a major deviation from the permission granted. Plaintiff claims that Mr. Brandt committed a major deviation from the permission granted to him by violating TL/IC's zero tolerance policy against drinking and driving.

In Missouri, omnibus clauses may limit insurance coverage to permissive users, but "not every deviation from the scope of the express or implied permission will defeat coverage." *Shelter Mut. Ins. Co.*, 46 S.W.3d 65, 67 (Mo. App. W.D. 2001). "Whether a particular use exceeds the scope of permission granted is determined by application of the minor deviation rule." *Id.* (citing *Am. Family Mut. Ins. Co. v. Arnold Muffler, Inc.*, 21 S.W.3d 881, 883 (Mo. App. E.D. 2000); *See also*, *Speidel v. Kellum*, 340 S.W.2d 200, 202-203 (Mo. App. 1960). Under the

minor deviation rule, coverage will be afforded under the omnibus clause "where a deviation from intended use is only a minor one and not a gross, substantial, or major violation." *Shelter Mut. Ins. Co.*, 46 S.W.3d at 67; *Am. Family Ins. Co.*, 21 S.W.3d at 883.  In determining whether a deviation is "gross, substantial, or major," Missouri courts consider the relationship between the scope of use and the extent of the deviation. *See e.g.*, *Shelter Mut. Ins. Co.*, 46 S.W.3d at 67; *Am. Family Ins. Co.*, 21 S.W.3d at 883.

In Missouri, few Courts have addressed the issue of whether driving a vehicle under the influence of alcohol constitutes a major deviation.  However, at least one Missouri Court addressed this issue. *See United Fire & Cas. Co. v. Tharp*, 46 S.W.3d 99 (Mo. App. S.D. 2001). In that case, the automobile insurer sought a declaratory judgment that the named insured's employee was not insured as a permissive user when he drove a company vehicle to get food and pick up a passenger after drinking alcohol. *Id.* at 100-101.  In the case, the employee violated a company rule by driving the company vehicle under the influence of alcohol. *Id.* at 102.  In considering whether alcohol use was a substantial deviation from permission, the Court held that "the omnibus clause in Employer's policy extended coverage to [the employee] for this accident despite his violation of Employer's rule against drinking alcohol while driving the van." *Id.* at 107.  The Court adopted the rationale of another court and stated that the violation of a company rule "is not sufficient to terminate automatically the employer's express permission for the actual use of the vehicle at the time an accident occurs." *Id.* (internal citations omitted).

The Court finds that the facts in *Tharp* are similar to the facts here.  Like the employee in *Tharp*, Mr. Brandt operated a company vehicle under the influence of alcohol and was involved in an automobile accident.  The Court agrees with the *Tharp* rationale that violating a company rule

is not sufficient to automatically terminate permission to use a vehicle. On this point, the Court finds no valid reason why the Court should distinguish between employees with express permission and those with implied permission to drive a company vehicle.

As a result, the Court finds that a genuine issue of material fact exists as to Plaintiffs' claim regarding coverage for Daniel Brandt under the insurance policies issued by Plaintiffs. Therefore, the Court denies Plaintiffs' Motion for Summary Judgment Regarding Coverage for Daniel Brandt.

## C. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COVERAGE FOR DONALD BUNCH'S UNDERINSURED MOTORIST CLAIM

Plaintiffs argue that Defendants Donald and Patricia Bunch are not entitled to underinsured motorist coverage under the insurance policies issued to Total Lock & Security/The Installers Company. Plaintiffs state that Exclusion (3) under the Missouri Underinsured Motorist Coverage section of the policy excludes from coverage "anyone using a vehicle without a reasonable belief that the person is entitled to do so." Plaintiffs claim that the undisputed facts show that Mr. Bunch could not have had a reasonable belief that he was entitled to use the vehicle.

In Missouri, courts have held that "no reasonable belief" exclusions in insurance policies are not ambiguous, and courts give these exclusions their plain meaning. *Marchand v. Safeco Ins. Co. of Am.*, 2 S.W.3d 826, 830 (Mo. App. E.D. 1999). When interpreting a "no reasonable belief" exclusion, Missouri Courts generally hold that a passenger in a vehicle is "using" the vehicle. *Id.* at 828; *Francis-Newell v. Prudential Ins. Co. of Am.*, 841 S.W.2d 812, 815 (Mo. App. S.D. 1992). At the time of the accident, Mr. Bunch was a passenger in the Jeep Liberty

driven by Mr. Brandt. The Court concludes that Mr. Bunch was "using" the vehicle at the time of the accident.

To determine whether a passenger is "using" an insured vehicle with "no reasonable belief" he or she is entitled to use it, Missouri Courts have adopted a two part test. *See Omaha Property & Casualty Ins. Co. v. Peterson*, 865 S.W.2d 789, 791 (Mo. App. W.D. 1993); *Haulers Ins. Co., Inc. v. Pounds*, 272 S.W.3d 902, 906 (Mo. App. S.D. 2008). First, the Court must determine whether the user had a subjective belief that he or she was entitled to use the vehicle. *Peterson*, 865 S.W.2d at 791. Secondly, the Court must determine whether this belief is reasonable. *Id.* In determining whether the belief is reasonable, Missouri Courts have applied the following factors: (1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was "legally" entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that he was entitled to drive the vehicle. *Id.*; *Pounds*, 272 at 906.

The Court looks to the decision in *Haulers Ins. Co., Inc. v. Pounds* for guidance. 272 S.W.3d 902 (Mo. App. S.D. 2008). In *Pounds*, the insurance policy in question included an exclusion that stated "We do not provide Liability Coverage for any 'insured': ... [u]sing a vehicle without a reasonable belief that 'insured' is entitled to do so...." *Id.* at 905. In this case, the insured father purchased an automobile insurance policy from Haulers ("the policy"), which provided coverage for himself and for members of his family who resided with him. *Id.* The insured's daughter resided with the insured. *Id.* The daughter drove a vehicle owned by her

friend's father.  *Id.*  The daughter and friend were involved in an accident.  *Id.*  Because of injuries resulting from this accident, the friend died and the friend's father brought a wrongful death action against the daughter's father.  *Id.*  The daughter was fifteen years old and did not have a driver's license.  *Id.*  On appeal, the Court asked:

> "whether the fact that Daughter was fifteen years old, unlicensed, and unable to legally drive any automobile on the public roadways [was] of itself sufficient as a matter of law to make unreasonable any subjective belief she may have had that she was 'entitled' to drive Philip's car at the time of the collision."

*Id.*  The Court reversed the lower court's decision and held that the Haulers Insurance Company was not entitled to summary judgment on its declaratory action to exclude coverage under the "no reasonable belief" provision.  *Id.* at 908.  The Court found that a genuine issue of material fact existed as to "whether Daughter had any reason to believe that she did not have permission to use Philip's vehicle."  *Id.* at 907.  "In fact, a reasonable inference favorable to Father is that Daughter had permission to operate the vehicle based on the broad, unfettered use of the vehicle given to Philip by its owner."  *Id.*

Like *Pounds*, a genuine issue of material fact exists as to whether Mr. Bunch had permission to use the covered vehicle, a Jeep Liberty.  While Mr. Bunch himself did not have authority to "drive" the vehicle, he did have the authority to "use" the vehicle as a passenger. Although the issue has not been finally decided, there is a reasonable inference favorable to Mr. Bunch that Mr. Brandt had permission to operate the vehicle based on the broad, unfettered use of the vehicle given to Mr. and Mrs. Bunch by TL/IC.  The facts indicate that Mr. Bunch had possessory rights over the vehicle despite not being authorized to drive it. The evidence also shows that TL/IC had no written policy concerning the use of company vehicles.  Mr. and Mrs.

Bunch testified that no one at TL/IC ever provided them with any policies or procedures regarding the use of company vehicles. TL/IC granted Mr. and Mrs. Bunch almost unlimited use of the Jeep Liberty while on job sites outside the St. Louis area, and the evidence is contested as to whether this unfettered discretion extended to personal use in the St. Louis area. The evidence also shows that Mr. and Mrs. Bunch notified their supervisors at TL/IC and obtained prior permission to "use" the vehicle in order to visit Mr. Bunch's mother. In addition, a question for the jury exists as to whether TL/IC authorized Mr. Brandt to operate company vehicles at the time of the accident. Thus, Mr. Bunch could have a reasonable belief that he was entitled to "use" the vehicle by allowing Mr. Brandt to drive him to his mother's house. After weighing the factors outlined in *Peterson* and *Pounds*, the Court finds that Mr. Bunch had a reasonable belief he could use the Jeep Liberty in the manner he did.

In arguing that Mr. Bunch could not have a reasonable belief that he was entitled to use the vehicle, Plaintiffs rely heavily on the fact that Mr. Brandt did not have express permission to drive the vehicle from anyone at TL/IC other than Mr. and Mrs. Bunch. Mr. Bunch admitted that Mr. Brandt did not get permission to drive the Jeep Liberty from anyone other than he and Mrs. Bunch. Nonetheless, this testimony is not sufficient as a matter of law to show that Mr. Bunch had an unreasonable belief that he was entitled to use the Jeep Liberty. The evidence suggests that TL/IC did not give Mr. Bunch specific instructions about letting other employees in the company drive the Jeep Liberty. If it is determined that Mr. Brandt was an employee of TL/IC, he was authorized to operate company vehicles, and he testified that installers were allowed to use any company vehicle. Taken together, these facts create a reasonable inference that Mr. Bunch had a

reasonable belief that he could "use" the vehicle by allowing Mr. Brandt to drive him to his mothers.

Additionally, Plaintiffs argue that Mr. Bunch could not reasonably believe Mr. Brandt was authorized to drive the Jeep Liberty because Mr. Brandt and Mr. Bunch exceeded the scope of their permission by drinking alcohol prior to this use. Mr. Bunch acknowledged that nobody is allowed to drink alcohol and drive a TL/IC owned vehicle. However, this admission by itself is insufficient to establish as a matter of law that Mr. Bunch had an unreasonable belief he could use the Jeep Liberty. The evidence is contested as to whether Mr. Bunch knew that Mr. Brandt was legally intoxicated. Furthermore, the facts presented create a reasonable inference that Mr. Bunch did not know how much alcohol Mr. Brandt consumed prior to driving the vehicle. Finally, at least one Missouri Court addressing a similar issue refused to deny coverage to an employee operating a company vehicle when the employee violated the employer's rule against driving a vehicle under the influence of alcohol. *See United Fire & Cas. Co. v. Tharp*, 46 S.W.3d 99, 107 (Mo. App. S.D. 2001).

Therefore, the Court finds that a genuine issue of material fact exists as to whether Mr. Bunch had a reasonable belief he could use the Jeep Liberty. The Court denies Plaintiff's Motion for Partial Summary Judgment Regarding Underinsured Motorist Coverage for Donald Bunch.

## V. CONCLUSION

The Court finds that the terms contained in the Midwestern Policy are not ambiguous as to which employees may grant permission to use a "covered auto." Since the terms are not ambiguous, the Court must deny Defendants' Motion for Partial Summary Judgment Regarding Liability Coverage Daniel H. Brandt, II [doc. #50]. The Court further finds that a genuine issue

of material fact exists as to whether Mr. Brandt had permission to drive a "covered auto." Therefore the Court must deny Plaintiffs' Motion for Partial Summary Judgment Regarding Coverage for Daniel Brandt [doc. #38]. Finally, the Court denies Plaintiff's Motion for Partial Summary Judgment Regarding Underinsured Motorist Coverage for Donald Bunch [doc. #42] because a genuine issue of material fact exists as to whether Mr. Bunch had a reasonable belief he could use the Jeep Liberty.

Accordingly,

**IT IS HEREBY ORDERED** that Motion of Defendants Donald A. Bunch, Patricia A. Bunch and Daniel H. Brandt II for Partial Summary Judgment Against Plaintiffs Regarding Liability Coverage for Daniel H. Brandt, II [doc. #50] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs Hawkeye-Security Insurance Company and the Midwestern Indemnity Company's Motion for Partial Summary Judgment Regarding Coverage for Daniel Brandt [doc. #38] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs Hawkeye-Security Insurance Company and the Midwestern Indemnity Company's Motion for Partial Summary Judgment Regarding Coverage for Donald Bunch's Underinsured Motorist Claim [doc. #42] is **DENIED**.

Dated this <u>22nd</u> Day of <u>December</u>, 2009.


E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE